# EXHIBIT "1"

Stephens County - District Clerk

Christie Coapland
District Clerk
Stephens County, Texas

Rhonda Peacock

CAUSE NO. CV32140

| | | |
|---|---|---|
| **ROBERT WALTERS,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **STEPHENS COUNTY, TEXAS** |
| | § | |
| **FORD MOTOR COMPANY and** | § | |
| **PATTERSON TOYOTA OF** | § | |
| **LONGVIEW INC.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | **90TH JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW, ROBERT WALTERS, Plaintiff herein, complaining of FORD MOTOR COMPANY, a foreign corporation doing business in Texas and PATTERSON TOYOTA OF LONGVIEW, INC. a Texas corporation, Defendants, herein, and for cause of action say:

### I.

### DISCOVERY CONTROL PLAN

1.    Plaintiffs intend to conduct discovery under LEVEL TWO (2) of Rule 190 of the Texas Rules of Civil Procedure.

### II.

### PARTIES

2.    The Plaintiff in this case is ROBERT WALTERS (hereinafter also referred to as "Plaintiff"). At all times material hereto Plaintiff was a resident of Stephens County, Texas.

3.    Defendant FORD MOTOR COMPANY, (hereinafter also referred to as "Ford"), is, and at all times material hereto was, a foreign corporation doing business in the State of Texas and may be served through its registered agent for service of process at CT Corp. System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

4.     Defendant, PATTERSON TOYOTA OF LONGVIEW, INC. (hereinafter also referred to as "the Patterson Toyota") is, and at all times material hereto was, a Texas corporation organized under the laws of the State of Texas and was conducting a business enterprise under the name Patterson Toyota, and may be served through its registered agent for service, William R. Patterson, 1201 McCann Road, Longview, Texas 75601. Patterson Toyota's principal office and principal place of business is located in Gregg County, Texas.

### III.

### JURISDICTION AND VENUE

5.     This Court has jurisdiction over Defendants because at all times material hereto Defendants conducted business in Texas and maintained sufficient minimum contacts with the State of Texas such that the exercise of jurisdiction over such defendants would not offend traditional notions of fair play and substantial justice.

6.     This Court also has jurisdiction over this cause of action because the amount in controversy, exclusive of interest and costs, exceeds the jurisdictional thresholds of this Court.

7.     Venue of this cause of action is proper in Stephens County, Texas, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to the claim occurred in Stephens County, Texas.

### IV.

### STATEMENT OF FACTS

8.     On or about February 15, 2016, Robert Walters, Plaintiff, sustained damages when a defective and unreasonably dangerous 2015 Ford F-150 Crew Cab XLT (VIN: 1FTEW1EF4FFA10219) (hereinafter also referred to as "the vehicle") erupted into flames and ignited a blaze that destroyed his carport, his contents, a storage building, and two other vehicles.

9.      Plaintiff parked the 2015 Ford F-150 in the carport of his home located at 2502 U.S. Hwy. 183 South, Breckenridge, Texas 76424.

10.     The vehicle remained parked with the ignition in the "OFF" position until the fire occurred.

11.     During the afternoon of February 15, 2016, while the vehicle was parked in the carport and with the ignition in the "OFF" position, the vehicle erupted into flames.

12.     Plaintiff saw the fire in the driver side of the vehicle's engine compartment. Helpless, Plaintiff was forced to watch his home perish in flames caused by the 2015 Ford F-150.

13.     The fire investigators place the cause and origin of the fire in the 2015 Ford F-150 parked in the carport.

14.     Defendant Ford designed, manufactured and marketed the 2015 Ford F-150, which was in substantially the same condition as when it left the possession of Ford.

15.     Defendant Patterson Toyota advertised and sold the 2015 Ford F-150 to the Plaintiff, which was in substantially the same condition as when it left the possession of Patterson Toyota.

**V.**

**COUNT ONE – STRICT LIABILITY AS TO FORD**

16.     Plaintiff hereby adopts, restates and re-alleges each and every paragraph of this Petition as if fully and completely set forth herein.

17.     Ford is and was at the time of the occurrence in question engaged in the business of designing, manufacturing and marketing vehicles to the general public, including the 2015 Ford F-150 sold to Plaintiffs. Plaintiff, therefore, invokes the doctrine of strict liability as enunciated in § 402A of the Restatement (Second) of Torts and by the Supreme Court of Texas.

18.     Ford has a duty and had a duty at the time of manufacture of the 2015 Ford F-150 in question to design, manufacture and market vehicles in a responsible and safe way so as not to cause injury or damage to Plaintiff or members of the general public.

19.     By designing, manufacturing and marketing a vehicle such as the 2015 Ford F-150 at issue here, Ford furnished to Plaintiff a product which was and is unreasonably dangerous to consumers and to Plaintiff in particular. The vehicle was defective in that it spontaneously, unexpectedly ignited. Specifically, Ford is strictly liable in the following regards:

a.     The design and manufacture of the 2015 Ford F-150 was such that it had a dangerous propensity to ignite;

b.     The 2015 Ford F-150 was placed on the market without adequate warning to its users, ultimate users and consumers thereof, of the propensities of the 2015 Ford F-150 for igniting;

c.     The 2015 Ford F-150 was placed on the market without adequate warnings to consumers and Plaintiffs in particular, of the tendency of the vehicle to ignite;

d.     The standard of care in the design, development and manufacture of the 2015 Ford F-150 which a reasonable prudent manufacturer of the same or similar motor vehicles would have used, under the same or similar circumstances, was not used by Ford;

e.     The testing utilized by Ford to test the 2015 Ford F-150 was inadequate;

f.     The 2015 Ford F-150 was negligently and improperly designed and manufactured, when Ford knew or should have known that the vehicle was unsafe and would cause irreparable harm and unreasonable risk of harm to Plaintiffs; and

g.     The vehicle was improperly and inadequately tested and inspected by Ford.

20.     Plaintiff alleges that the 2015 Ford F-150 in question was defective and unsafe for its intended purpose at the time the vehicle left Ford and at the time the Plaintiff purchased the vehicle in question. The 2015 Ford F-150 was defective because it was unreasonably dangerous, in that, it suddenly and unexpectedly ignited.

21.     The design, manufacture and marketing of the defective 2015 Ford F-150 was a proximate and/or producing cause of all injuries suffered by Plaintiff as hereinafter more particularly alleged.

**VI.**

**COUNT TWO – NEGLIGENCE AS TO FORD**

22.     Plaintiff hereby adopts, restates and re-alleges each and every paragraph of this Petition as if fully and completely set forth herein.

23.     Ford had a duty to design, manufacture and market a vehicle that was safe for use as a passenger vehicle. In its design, manufacture and marketing of the 2015 Ford F-150, Ford breached these duties. Specifically, Ford was negligent in the following regards:

a.      The design and manufacture of the 2015 Ford F-150 was such that it had a dangerous propensity to ignite;

b.      The 2015 Ford F-150 was placed on the market without adequate warning to its users, ultimate users and consumers thereof of the propensities of the 2015 Ford F-150 for igniting;

c.      The 2015 Ford F-150 was placed on the market without adequate warnings to consumers and Plaintiffs in particular of the tendency of the vehicle to ignite;

d.      The standard of care in the design, development and manufacture of the 2015 Ford F-150 which a reasonable prudent manufacturer of the same or similar motor vehicles would have used, under the same or similar circumstances, was not used by Ford;

e.      The testing utilized by Ford to test the 2015 Ford F-150 was inadequate;

f.      The 2015 Ford F-150 was negligently and improperly designed and manufactured, when Ford knew or should have known that the vehicle was unsafe and would cause irreparable harm and unreasonable risk of harm to Plaintiffs; and

g.      The vehicle was improperly and inadequately tested and inspected by Ford.

24.    The negligence of Ford was a proximate and/or producing cause of all injuries suffered by Plaintiff as hereinafter more particularly alleged.

## VII.

### COUNT THREE – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AS TO FORD

25.    Plaintiff hereby adopts, restates and re-alleges each and every paragraph of this Petition as if fully and completely set forth herein.

26.    Defendant Ford breached the implied warranty of merchantability by designing, testing, manufacturing, marketing, selling and/or distributing an automobile that could not be used for its intended, ordinary purpose.

27.    Under section 2.314 of the Texas Business and Commerce Code, a warranty that the goods shall be merchantable is implied in the contract for their sale, which means the vehicle in question was required to be fit for the ordinary purpose for which it was to be used. The vehicle in question was unfit for its ordinary purpose because it was constructed in such a way that made it unreasonably dangerous.

28.    An ordinary purpose of an automobile is to be driven without risk that it will spontaneously ignite, exposing the occupants or those within vicinity of the fire as it spreads, to great risk of personal injury and/or property damage, besides rendering the automobile itself inoperable. Persons should be able to reasonably expect that an automobile turned off and parked safely in a garage or such similar area would not be a fire hazard posing a risk to life and property.

29.    Defendant Ford is the manufacturer of the vehicle in question.

30.     At the time the vehicle in question left Defendant Ford's possession, the vehicle in question was not fit for these ordinary purposes because it was constructed in such a way that made it unreasonably dangerous.

31.     The foregoing acts and/or omissions of Defendant Ford were a producing and/or proximate cause of the Plaintiffs' damages.

32.     Plaintiff notified Defendant Ford of the breach of this warranty.

## VIII.

### COUNT FOUR – DECEPTIVE TRADE PRACTICES ACT ("DTPA") AS TO FORD

33.     Plaintiff hereby adopts, restates and re-alleges each and every paragraph of this Petition as if fully and completely set forth herein.

34.     The Plaintiffs are consumers of the vehicle in question.

35.     Defendant Ford is a proper party under the DTPA.

36.     Defendant Ford has continuously represented to the public via advertising and marketing that its automobiles were safe.

37.     Plaintiff relied on this marketing campaign in their purchase and/or use of the vehicle in question.

38.     Defendant Ford knew that the 2015 Ford F-150 was defective and could catch fire, burn surrounding automobiles, surrounding structures, and harm people.

39.     If Plaintiff knew about the defective nature of the 2015 Ford F-150, he would not have purchased the vehicle in question.

40.     Defendant Ford's actions and/or inactions resulted in a violation of the DTPA. TEX. BUS. & COM. CODE §17.41. These violations include, but are not necessarily limited to:

a.   representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. TEX. BUS. & COM. CODE §17.46(b)(7);

b.   advertising goods or services with intent not to sell them as advertised. TEX. BUS. & COM. CODE §17.46(b)(9);

c.   Breach of implied and/or express warranty. TEX. BUS. & COM. CODE §17.50(a)(2); and

d.   Failing to disclose information concerning goods which was known at the time of the transaction with the intent to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. TEX. BUS. & COM. CODE §17.50(b)(24).

41.   *Breach of Warranty* – Defendant Ford breached the implied warranty of merchantability, among others.

42.   *Producing Cause* - The foregoing conduct was a producing cause of Plaintiff's injuries and damages, more particularly set forth below.

43.   *Knowing Conduct* - Defendant Ford engaged in the foregoing conduct knowingly:

a.   Defendant Ford was actually aware, at the time of the above conduct, of the falsity, deception, or unfairness of such conduct. TEX. BUS. & COM. CODE § 17.45(9); and

b.   Defendant Ford was actually aware of the act, practice, condition, defect, or failure constituting the breach of warranty. TEX. BUS. & COM. CODE § 17.45(9).

44.   *Producing Cause* - The foregoing conduct was a producing cause of Plaintiff's injuries and damages, more particularly set forth below.

45.   *Intentionally* – Plaintiff claims Defendant Ford Motor Company engaged in the foregoing conduct *intentionally*.

a.   Defendant Ford was actually aware of the act, practice, condition, defect, or failure constituting the breach of warranty. TEX. BUS. & COM. CODE § 17.45(9);

b.   Defendant Ford was actually aware of the falsity, deception, or unfairness of the above conduct, or the condition, defect, or failure constituting a breach of warranty, and specifically intended that each Plaintiff act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness. TEX. BUS. & COM. CODE § 17.45(13);

c.   Defendant Ford acted with flagrant disregard of prudent and fair business practices to the extent that the defendant should be treated as having acted intentionally. TEX. BUS. & COM. CODE § 17.45(13);

d.   Defendant Ford acted *knowingly* in that it was actually aware, at the time of the above conduct, of the falsity, deception, or unfairness of such conduct. TEX. BUS. & COM. CODE § 17.45(9); and

e.   Defendant Ford acted *knowingly* in that it was actually aware of the act, practice, condition, defect, or failure constituting the breach of warranty. TEX. BUS. & COM. CODE § 17.45(9).

46.   *Application to Claims for Bodily Injury or Mental Anguish* - The DTPA applies to claims for mental anguish to the extent set forth in Section 17.50(b) and (h). TEX. BUS. & COM. CODE § 17.49(e).

47.   Section 17.50(b) of the Texas Business and Commerce Code provides, in pertinent part, as follows:

In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of economic damages found by the trier of fact. If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages." TEX. BUS. & COM. CODE § 17.50(b).

48.   Thus, Plaintiff may recover:

a.   economic damages;

b.   damages for mental anguish and three times the amount of economic damages if Defendant Ford acted *knowingly*; and

c.   damages for mental anguish and three times the amount of economic damages, and three times the amount of damages for mental anguish if Defendant Ford acted *intentionally*. TEX. BUS. & COM. CODE § 17.50(b).

49.   Section 17.45(11) of the Texas Business and Commerce Code defines economic damages as follows:

> "Economic damages" means compensatory damages for pecuniary loss, including costs of repair and replacement. The term does not include exemplary damages or damages for physical pain and mental anguish, loss of consortium, disfigurement, physical impairment, or loss of companionship and society. TEX. BUS. & COM. CODE § 17.45(11).

50.   Thus, Plaintiff may recover for his pecuniary loss. Pecuniary loss includes money and everything that can be valued in money. *Kneip v. Unitedbank-Victoria*, 734 S.W.2d 130, 134 (Tex. App.–Corpus Christi 1987, no writ).

51.   Under Section 17.50(b), Plaintiff can also recover for mental anguish damages as well as discretionary additional damages, if Defendant Ford engaged in the complained of conduct either *knowingly* or *intentionally*.

52.   Under the Texas Deceptive Trade Practices Act, Defendant Ford Motor Company, as a result of its *knowing* or *intentional* breach of the above provisions of the Texas Deceptive Practices – Consumer Protection Act, is liable for actual and treble damages, and mental anguish suffered by the Plaintiff, and reasonable attorneys' fees.

53.   The foregoing acts and/or omissions of Defendant Ford were a producing and/or proximate cause of the Plaintiff's damages.

## IX.

### COUNT FIVE – NEGLIGENT MISREPRESENTATION AS TO FORD

54.   Plaintiff hereby adopts, restates and re-alleges each and every paragraph of this Petition as if fully and completely set forth herein.

55.   Defendant Ford made the following misrepresentations in the course of its business, in a transaction in which it had a pecuniary interest in both:

      a.   Representing the vehicle in question as being safe at the same time Ford knew the vehicle in question was defective in that it was subject to sudden ignition and catastrophic resulting fires;

      b.   Representing the vehicle in question as being safe at the same time Ford intentionally concealed from and/or failed to disclose to Plaintiffs and all others in the chain of distribution the true nature of the dangerous fire prone 2015 Ford F-150;

      c.   Representing "Quality is Job #1" at Ford when it is not;

      d.   Representing the vehicle in question as being "Built Ford Tough" when it is dangerous and causes fires; and

      e.   Representing the vehicle in question as being safe when it is not.

56.   Defendant Ford supplied the above false information for the guidance of others in their business.

57.   Defendant Ford failed to exercise reasonable care or competence in obtaining or communicating the above information.

58.   Plaintiff suffered pecuniary loss by justifiably relying on the above information.

## X.

### COUNT SIX – STRICT LIABILITY AS TO PATTERSON TOYOTA

59.   Plaintiff hereby adopts, restates and re-alleges each and every paragraph of this Petition as if fully and completely set forth herein.

60.    Patterson Toyota is and was at the time of the occurrence in question engaged in the business of marketing and selling vehicles to the general public, including the 2015 Ford F-150 sold to Plaintiff. Plaintiff, therefore invokes the doctrine of strict liability as enunciated in § 402A of the Restatement (Second) of Torts, and by the Supreme Court of Texas.

61.    Patterson Toyota has a duty and had a duty at the time of the sale of the 2015 Ford F-150 in question to market vehicles in a responsible and safe way so as not to cause injury or damage to the Plaintiff or members of the general public.

62.    By marketing and conveying a defective vehicle, such as the 2015 Ford F-150 at issue here, Patterson Toyota furnished to Plaintiffs a product which was and is unreasonably dangerous to consumers and to Plaintiffs in particular. The vehicle was defective in that it spontaneously, unexpectedly ignited. Specifically, Patterson Toyota is strictly liable in the following regards:

a.    Marketing, advertising and conveying a 2015 Ford F-150 which had a dangerous propensity to ignite;

b.    Placing the 2015 Ford F-150 on the market without adequate warning to its users, ultimate users and consumers thereof of the propensities of the 2015 Ford F-150 for igniting;

c.    The standard of care in marketing, advertising and conveying the 2015 Ford F-150 which a reasonable prudent manufacturer of the same or similar motor vehicles would have used, under the same or similar circumstances, was not used by Patterson Toyota;

d.    Negligently and improperly marketing, advertising and conveying the 2015 Ford F-150 when Patterson Toyota knew or should have known that the vehicle was unsafe and would cause irreparable harm and unreasonable risk of harm to Plaintiffs.

63.    Plaintiff alleges that the 2015 Ford F-150 in question was defective and unsafe for its intended purpose at the time the vehicle left Patterson Toyota and at the time the Plaintiffs

purchased the vehicle in question. The 2015 Ford F-150 was defective because it was unreasonably dangerous, in that, it suddenly and unexpectedly ignited.

64.     The design, manufacture and marketing of the defective 2015 Ford F-150 was a proximate and/or producing cause of all injuries suffered by Plaintiff as hereinafter more particularly alleged.

## XI.

### COUNT SEVEN – NEGLIGENCE AS TO PATTERSON TOYOTA

65.     Plaintiff hereby adopts, restates and re-alleges each and every paragraph of this Petition as if fully and completely set forth herein.

66.     Patterson Toyota had a duty to market, advertise and convey a vehicle that was safe for use as a passenger vehicle.  In its marketing, advertising and conveyance of the 2015 Ford F-150, Patterson Toyota breached these duties.   Specifically, Patterson Toyota was negligent in the following regards:

   a.     Marketing, advertising and conveying a 2015 Ford F-150 which had a dangerous propensity to ignite;

   b.     Placing the 2015 Ford F-150 on the market without adequate warning to its users, ultimate users and consumers thereof of the propensities of the 2015 Ford F-150 for igniting;

   c.     The standard of care in marketing, advertising and conveying the 2015 Ford F-150 which a reasonable prudent manufacturer of the same or similar motor vehicles would have used, under the same or similar circumstances, was not used by Patterson Toyota;

   d.     Negligently and improperly marketing, advertising and conveying the 2015 Ford F-150 when Patterson Toyota knew or should have known that the vehicle was unsafe and would cause irreparable harm and unreasonable risk of harm to Plaintiffs.

67. The negligence of Patterson Toyota was a proximate and/or producing cause of all injuries suffered by Plaintiff as hereinafter more particularly alleged.

## XII.

### COUNT EIGHT – NEGLIGENT MISREPRESENTATION AS TO PATTERSON TOYOTA

68. Plaintiff hereby adopts, restates and re-alleges each and every paragraph of this Petition as if fully and completely set forth herein.

69. Defendant Patterson Toyota made the following misrepresentations in the course of its business, in a transaction in which it had a pecuniary interest in both:

    a. Representing the vehicle in question as being safe at the same time Patterson Toyota Motors knew the vehicle in question was defective in that it was subject to sudden ignition and catastrophic resulting fires;

    b. Representing the vehicle in question as being safe at the same time Patterson Toyota intentionally concealed from and/or failed to disclose to Plaintiffs and all others in the chain of distribution the true nature of the dangerous fire prone 2015 Ford F-150;

    c. Representing "Quality is Job #1" at Ford when it is not;

    d. Representing the vehicle in question as being "Built Ford Tough" when it is dangerous and causes fires; and

    e. Representing the vehicle in question as being safe when it is not.

70. Defendant Patterson Toyota supplied the above false information for the guidance of others in their business.

71. Defendant Patterson Toyota failed to exercise reasonable care or competence in obtaining or communicating the above information.

72. Plaintiff suffered pecuniary loss by justifiably relying on the above information.

## XIII.

### *RES IPSA LOQUITUR*

73.    Plaintiff hereby adopts, restates and re-alleges each and every paragraph of this Petition as if fully and completely set forth herein.

74.    Plaintiff cannot more specifically allege the acts of negligence on the part of Defendant Ford, for the reason that the facts in that regard are particularly within the knowledge of Defendant Ford, and, in the alternative, in the event Plaintiff is unable to prove specific acts of negligent manufacture or design, Plaintiff relies on the doctrine of *res ipsa loquitur*.

75.    In this connection, Plaintiff will show that the manufacture and design of the 2015 Ford F-150 was within the exclusive control of Defendant Ford. Plaintiffs have no means of ascertaining the method or manner in which the 2015 Ford F-150 was manufactured and designed, and it came into Plaintiff's possession in the same condition as it was in when it left the control of Defendant Ford. The occurrence causing harm to Plaintiff, as described above, was one which in the ordinary course of events, would not have occurred without negligence on the part of Defendant Ford. Thus, Defendant Ford was negligent in the manufacture, design, or both, of the 2015 Ford F-150, which negligence was a proximate cause of Plaintiff's damages more particularly set forth below.

## XIV.

### PRODUCING AND PROXIMATE CAUSE

76.    Each and every one of the foregoing acts and omissions of FORD MOTOR COMPANY and PATTERSON TOYOTA, respectively, as herein above particularly set forth in this Petition, and each of said counts, taken singularly or in any combination, constitute a direct,

producing and proximate cause of the injuries and damages suffered and sustained by Plaintiffs as hereinafter more particularly alleged.

## XV.

### EXEMPLARY DAMAGES AS TO FORD

77.    Plaintiff hereby adopts, restates and re-alleges each and every paragraph of this Petition as if fully and completely set forth herein.

78.    As a basis for imposition of punitive damages on Defendant Ford, Plaintiffs say:

79.    Plaintiffs intend to prove by clear and convincing evidence that their injuries and damages, more particularly set forth above, resulted from gross negligence.

80.    The conduct of Defendant Ford when viewed objectively from the standpoint of Defendant Ford at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

81.    Defendant Ford had actual subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.

82.    The acts, omissions, or both, of Defendant Ford constituted gross negligence and created a high probability of serious injury or loss of property.

83.    Defendant Ford knew the vehicle in question was defective in that it is subject to sudden ignition and catastrophic resulting fires.

84.    Defendant Ford intentionally concealed from and/or failed to disclose to Plaintiffs and all others in the chain of distribution, the true nature of the dangerous 2015 Ford F-150.

85.    Defendant Ford has a history and habit of blaming their suppliers instead of fixing the problem and/or defect at issue.

86.     Defendant Ford knew of the above risks, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of consumers in general, and Plaintiff specifically.

87.     The above and foregoing acts and/or omissions of Defendant Ford, resulting in the damages to Plaintiff, has caused actual damages to Plaintiff in an amount in excess of the minimum jurisdictional limits of this Court.

## XVI.

### COMPENSATORY DAMAGES

88.     Plaintiff hereby adopts, restates and re-alleges each and every paragraph of this Petition as if fully and completely set forth herein.

89.     Plaintiff would show that his damages, injuries and/or losses are within the jurisdictional limits of this Court, property damages, structure damage, content damage, mental anguish, costs to repair or replace his property, and any other consequential damages foreseeably arising from the incident in question.

90.     While the ultimate decision regarding the Plaintiff's damages is a matter that is solely within the sound discretion of the men and women of the jury that will be called upon to render justice in this case, due Texas Rules of Civil Procedure 47, Plaintiff is required to plead the maximum amount Plaintiff would seek at trial in this pleading, despite the fact that Plaintiff's injuries are ongoing. It is not in any way the intention of Plaintiff to invade the province of the jury in any manner, including with regard to the determination of damages. When this case is ultimately tried to a jury. At this time, the maximum amount of damages sought by Plaintiff is a judgment not to exceed $1,000,000.00 joint and severally against the Defendants.

## XVII.

### CLAIM FOR PRE-JUDGMENT AND POST-JUDGMENT INTEREST

91.     Plaintiff claims interest in accordance with Article 5069-1.05 V.A.T.S., TEXAS FINANCE CODE § 304.104, TEXAS FINANCE CODE § 304.105, and any other applicable law.

## XVIII.

### DEMAND FOR JURY TRIAL

92.     Plaintiff hereby requests a trial by jury and have tendered the required fee.

## XIX.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited to appear and answer herein, and that upon trial, Plaintiff has and recover the following:

1.     Judgment against Defendants for compensatory damages in excess of the minimum jurisdictional limits of the Court;

2.     Judgment for punitive damages in excess of the minimum jurisdictional limits of the Court;

3.     Pre-judgment interest in accordance with Texas law;

4.     Post-judgment interest in accordance with Texas law;

5.     Reasonable and necessary attorneys' fees;

6.     Discretionary and additional treble damages pursuant to the Texas Deceptive Trade Practices Act;

7.     Costs of suit; and

8.   Such other and further relief as this Court may deem proper and just.

LEGER KETCHUM & COHOON, PLLC

By: */s/ Bradley L. Leger*
**BRADLEY L. LEGER**
State Bar No. 24039899
**KASSI DEE PATRICK MARKS**
State Bar No. 24034550
10077 Grogan's Mill Road, Suite 325
The Woodlands, Texas 77380
Tel: (832) 764-7200
Fax: (832) 764-7211
Email: bleger@lkclawfirm.com
Email: kmarks@lkclawfirm.com
**ATTORNEYS FOR PLAINTIFF**